United States District Court
Southern District of Texas

**ENTERED**

July 31, 2023

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| David Romero, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-22-2442 |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

David Romero appeals the Social Security Administration (SSA) Commissioner's (Commissioner) final decision denying his application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 12, and the Commissioner's Motion for Summary Judgment, ECF No. 13. This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 10. Having considered the motions, administrative record, and applicable law, the court recommends that the Commissioner's final decision be **AFFIRMED**.

### 1. Procedural Posture

Romero filed the instant application for disability insurance benefits (DIB) on October 9, 2019. Tr. 70, 81. He alleged a disability onset date of March 6, 2016, due to depression and aphakia, a vision impairment. Tr. 70, 81, 199. Romero was twenty-three years old on the alleged disability onset date. Tr. 71, 82.

The SSA denied Romero's application at the initial level on January 21, 2020, and on reconsideration on March 18, 2020. Tr. 70, 81. Administrative Law Judge (ALJ) Caroline Beers held a

hearing on October 7, 2021. Tr. 34–69. At the hearing, the ALJ heard testimony from Romero, a medical expert (ME), and a vocational expert (VE). Tr. 35. Romero's counsel was present and examined all the witnesses. Tr. 50, 57, 66.

The ALJ and Romero's counsel discussed Romero's medical history in relation to his alleged disability onset date. Tr. 38. Romero's counsel agreed to amend the alleged disability onset date to November 15, 2019. Tr. 62. Romero's counsel testified that he discussed the matter with Romero and that Romero understood the consequences of the amendment and chose to amend voluntarily. *Id.*

The ME testified first and walked through several of Romero's medical records. Tr. 40–54. The ME explained Romero's diagnoses of major depressive disorder and persistent depressive disorder, also called dysthymia. Tr. 40. The ME discussed Romero's treatment records, which revealed that Romero's stressors included his vision impairment and financial aid issues. Tr. 41, 44.   His symptoms included irritability, aggression, difficulty sleeping and concentrating, low energy and self-esteem, and isolation. Tr. 41, 42, 46, 47. The ME opined that Romero's impairments of major depressive disorder and dysthymia were non-severe and that he did not meet the criteria of any listing.[1] Tr. 48. The ME testified that Romero could understand complex instructions and maintain concentration, persistence, and pace but that, because of his anxiety and depression, Romero could not perform fast-paced production work. Tr. 49. She also opined that Romero could interact with others, respond to changes in a work setting, accept instructions, and make decisions. Tr. 50.

---

[1] The listing is defined and discussed in Part 2.C., below.

Romero testified that he obtained a general education diploma and completed half of the courses for an associate degree but that he stopped attending classes because of the COVID-19 pandemic and his depression. Tr. 44. He testified that he had previous work experience as a shipping clerk and warehouse laborer. Tr. 55. He stated that "being around people and [lacking] the drive to want to work" are what kept him from working. Tr. 56. Romero explained that he could drive, read, and write and that he would play videogames for three to four hours each day. Tr. 55–57.

Romero testified that he had been undergoing weekly counseling for approximately one year and that his prescription medications included Lithium, Remeron, Prozac, Wellbutrin, and Abilify. Tr. 58. He also testified that he experienced symptoms such as hitting himself, intrusive thoughts, hearing voices, psychosis, and paranoia. Tr. 58, 61.

The VE testified that, under the Dictionary of Occupational Titles, Romero's previous shipping clerk position was classified as medium exertion, skilled work and that his warehouse position was medium exertion, unskilled work. Tr. 63.

The ALJ asked the VE to consider a person of Romero's age, education, and work history with the following limitations:

> [No] exertional limitations. This individual can avoid common workplace hazards such as boxes on the floor and open doors. This individual [can] read 12-point font, can handle . . . objects the size of a medium-sized marble, [and] can sort large objects such as clothing. [This individual cannot] work around unprotected heights or dangerous moving machinery, large bodies of water, open flames, and [cannot perform] commercial driving. This individual can understand, remember, and apply information . . . to carry out simple instructions and perform simple tasks. He can concentrate, keep pace, and persist for two hours during an eight-hour workday with customary breaks.

> No [f]ast-paced production work. This individual can occasionally interact with supervisors, coworkers, and the general public. [This individual] [c]an respond appropriately to changes in the work setting [and] [c]an accept instructions and . . . make decisions in a work setting.

Tr. 64. The VE opined that such an individual could not perform Romero's past relevant work as a store laborer or shipping and receiving clerk. Tr. 64–65. The VE opined that the individual could perform medium, unskilled jobs such as laundry worker or hand packager; light, unskilled jobs such as housekeeping cleaner, garment sorter, or office helper; and sedentary jobs such as table worker or mail addresser. Tr. 65–66.

The ALJ issued a decision on October 19, 2021, finding that Romero was not disabled from March 6, 2016, through the date of the decision. Tr. 17. Romero requested review of the ALJ's decision, which the Appeals Council denied on June 10, 2022. Tr. 1–6. Romero timely filed a complaint and an application to proceed in forma pauperis in federal court on July 18, 2022. *See Romero v. Kijakazi*, 4:22-mc-1196, ECF No. 1 (S.D. Tex. July 18, 2022).

## 2. *Legal Standards*

The Social Security Act provides DIB to individuals with physical and mental disabilities who have contributed to the program and were disabled "on or before the date . . . last insured." *See* 42 U.S.C. § 423; *Schofield v. Saul*, 950 F.3d 315, 319 (5th Cir. 2020). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield*, 950

F.3d at 317; 20 C.F.R. § 404.1520(a)(4) (2019). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2019).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision but may not reweigh the evidence or substitute its judgment. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. *Analysis*

#### A. *Step One*

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2019). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2019).

The ALJ found that Romero had not engaged in substantial gainful activity since the amended alleged disability onset date of November 15, 2019. Tr. 19. This finding is not in dispute.

### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2019) (citing 20 C.F.R. § 404.1509). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2019). "[A]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Romero had severe impairments of major depressive disorder, anxiety, aphakia of the right eye, and dysthymia. Tr. 19. In doing so, the ALJ rejected the ME's opinion that all of Romero's disorders were non-severe. Tr. 20. The ALJ explained that he found the ME's opinion to be inconsistent with medical treatment notes in the record as well as Romero's activities of daily living. *Id.* The ALJ noted that, although Romero received conservative treatment and had not been psychiatrically hospitalized, Romero received consistent psychotherapy and was taking five different psychiatric medications. *Id.* The ALJ also noted that Romero had experienced some psychotic symptoms and that his depression was not as responsive to medication. Tr. 21.

According to Romero, the ALJ erred by not finding his psychotic disorder to be severe. ECF No. 12 at 2, 6–12. The records

show that Romero had "unspecified psychosis" and occasionally experienced psychotic symptoms such as paranoia, hallucinations, and delusions. Tr. 499, 553, 556, 750–51. Romero does not cite to and any specific diagnosis of psychotic disorder. The ALJ did not discuss Romero's psychotic symptoms at step two.

Assuming that the ALJ erred, however, any error at step two is harmless because the ALJ continued beyond step two and considered all of Romero's impairments, including Romero's complaints about his alleged psychosis, at step five and in formulating the residual functional capacity. *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) ("[T]his case did not turn on a finding that Herrera's impairments were not severe at step two; rather, the ALJ concluded that Herrera was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work."); *Garcia v. Berryhill*, 880 F.3d 700, 705 n.6 (5th Cir. 2018) ("Any error at step two would likewise be harmless, given that the ALJ concluded at step four, on the basis of substantial evidence, that Garcia retained the ability to perform his past relevant work[.]"); *Guzman v. Berryhill*, No. EP-17-CV-312-MAT, 2019 WL 1432482, at *6 (W.D. Tex. Mar. 29, 2019) (collecting cases). As discussed below, the ALJ fully considered all of Romero's impairments in formulating the RFC, which the court finds to be supported by substantial evidence. *See* Part 3.D., *infra*. The court also notes that Romero makes no argument that the ALJ's RFC determination is incorrect. He has not demonstrated that the ALJ's ultimate disability determination would have changed had Romero's psychotic disorder—if any—been found severe. Thus, any error at step two is harmless.

### C. Step Three

At step three, the ALJ determines if any severe impairment meets or equals a listed impairment in appendix 1 (Listing). 20

C.F.R. § 404.1520(a)(4)(iii)(2019); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2019). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a) (2019). The claimant will be found disabled if all the criteria of a Listing are met or equaled. 20 C.F.R. § 404.1520(d) (2019); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals all of the specified medical criteria of a Listing. *Whitehead*, 820 F.3d at 780–81.

The ALJ considered Listing section 2.02 (loss of central visual acuity), section 2.03 (contraction of the visual field in the better eye), section 2.04 (loss of visual efficiency, or visual impairment, in the better eye), and section 12.04 (depressive, bipolar, and related disorders) at step three. Tr. 21.

The criteria for Listing sections 2.02, 2.03, and 2.04 are all measured against the claimant's better functioning eye. Listing §§ 2.02–2.04. The ALJ considered the criteria for these sections and explained that Romero's left eye, his better functioning eye, had 20/20 visual acuity. Tr. 21 (citing Ex. 3F5/Tr. 293). The ALJ concluded that Romero did not satisfy the Listing criteria. *Id.* Romero does not dispute these findings.

Romero argues that the ALJ should have considered Listing section 12.03 for schizophrenia spectrum and other psychotic disorders. ECF No. 12 at 10. The regulations state that the disorders considered under section 12.03 include, for example, "schizophrenia, schizoaffective disorder, delusional disorder, and psychotic disorder due to another medical condition." Listing § 12.00(B)(2)(b). While the medical records show that Romero had "unspecified psychosis not due to a substance or known physiological condition" and had experienced psychotic symptoms, there is no evidence that Romero was diagnosed with any of the

disorders enumerated under section 12.03. *Compare* Listing
§§ 12.00(B)(2)(b), 12.03(A), *with* Tr. 499, 553, 556, 750–571.
Absent a covered diagnosis or other evidence of section 12.03's
applicability, the ALJ did not err in failing to consider Listing
section 12.03. It is Romero's burden to demonstrate, with specific
medical evidence, that he meets all the criteria of a Listing section.
*Whitehead*, 820 F.3d at 780–81. Romero's argument that he meets
the section 12.03 criteria is a single, conclusory sentence with no
argument or analysis. ECF No. 12 at 10.

But even if Romero did have a qualifying diagnosis, he still
fails to demonstrate error. Listing sections 12.03, which Romero
argues should have been considered, and 12.04, which the ALJ did
consider, set forth in paragraphs A, B, and C certain criteria that
must be satisfied to meet the Listing sections. Listing
§§ 12.00(A)(2), 12.03, 12.04 (2019). To be found disabled at this
step, a claimant's mental disorder must satisfy the requirements
of both paragraphs A and B, or both paragraphs A and C. *Id.*
Paragraphs B and C are the same for sections 12.03 and 12.04.
Thus, if Romero does not meet either of paragraphs B or C, he does
not meet any of the Listing sections under consideration here. The
ALJ thoroughly considered the medical records and determined
that Romero did not meet the paragraph B or paragraph C criteria.
Tr. 19–22. Romero does not argue that the ALJ's analysis is
incorrect. Romero has failed to show that the ALJ erred at step
three. The court's independent review of the records and the ALJ's
opinion confirm that the ALJ did not err either legally or factually.

### D. Residual Functional Capacity

Before reaching the final two steps of the sequential
analysis, the ALJ must assess the claimant's residual functional
capacity (RFC). 20 C.F.R. § 404.1520(e) (2019) (citing 20 C.F.R. §
404.1545). The RFC is a determination of the most a claimant can
do despite all physical and mental limitations. *Perez*, 415 F.3d at

462. The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e) (2019); *see also Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2–*5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c) (2019); *see also Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2018) (stating that the RFC determination is the "sole responsibility of the ALJ").

In assessing Romero's RFC, the ALJ determined that Romero:

> ha[d] no exertional limitations; [could] avoid common workplace hazards, such as boxes on the floor and open doors; [could] read 12 point font, [could] handle objects the size of a medium size marble, [and could] sort large boxes, such as clothing; [could not] work around unprotected heights, dangerous moving machinery, large bodies of water, [or] open flames; [could not perform] commercial driving; [could] understand, remember[,] and apply information . . . to carry out simple instructions and perform simple tasks; [could] concentrate, keep pace[,] and persist for [two-]hour periods with customary breaks during an eight-hour workday; [could not perform] fast[-]paced production work; [could] occasionally interact with supervisors, coworkers, and the general public; [could] respond appropriately to changes in the work setting; and [could] accept instructions and make decisions in a work setting.

Tr. 22. The ALJ considered the hearing testimony, the medical opinions, the prior administrative medical findings, Romero's symptoms, and Romero's function report in assessing his RFC. Tr. 22–27.

Romero testified that he could not work because he had problems being around people and did not have the drive to work. Tr. 56. He also testified that his vision problems and depression

10

stopped him from working. Tr. 59. Romero explained that he could drive, read books for school, play videogames, and chat with other gamers online. Tr. 55, 56, 60. According to Romero's own function report, he could perform household chores, maintain his personal hygiene, and prepare his own meals. Tr. 227–28. The ALJ found that Romero's impairments could be expected to cause Romero's symptoms, but Romero's statements on the intensity, persistence, and limiting effect of his symptoms were not consistent with the record evidence. Tr. 23.

The ALJ considered Romero's medical records and found that Romero's "main issue" was mild chronic depression that had not responded well to medication. Tr. 23. The ALJ noted that Romero had made steady improvement in his symptoms since starting treatment in November 2019. *Id.*

November 2019 records show that Romero reported symptoms of restlessness, irritability, and difficulty concentrating. Tr. 343. His stressors included his worsening depression, family and work problems, and his eye condition. Tr. 344. Notes from his mental status examination state that he was cleanly groomed, cooperative, had rambling speech, and logical thoughts without delusions. Tr. 349–50. The notes state Romero's fund of knowledge was appropriate, and his insight and judgment were fair. Tr. 351.

December 2019 records note that Romero had no limitations in working, performing his activities of daily living, or in initiating or maintaining appropriate social interactions. Tr. 358. The records indicate that Romero still felt depressed and worried, but that he hoped to socialize more and become employed and independent. Tr. 363, 365. The records also state that Romero worked hard and earned As in his two classes and that he wanted to take three classes instead of two in the next semester. Tr. 371. Romero's treatment recommendation was psychotherapy and medication, including Fluoxetine and Melatonin. Tr. 351, 358.

January 2020 records show that Romero reported no improvement or regression in his anxiety or depression but that he wanted to see if a higher dose of medication would help. Tr. 375. His doctor increased his Fluoxetine dose and prescribed Trazodone. Tr. 380. Romero also began psychotherapy and reported that he was learning to challenge his assumptions, beliefs, and self-defeating thoughts. Tr. 408, 410, 424, 428.

March 2020 records show that Romero had a dysthymic mood and flat affect and that he rated his depression at nine to nine-and-a-half out of ten. Tr. 460–62. The notes indicate that Romero's Fluoxetine was increased and that Trazodone did not work for him even when increased. Tr. 465. Romero denied hallucinations or paranoia. Tr. 466.

However, April and May 2020 records note that Romero had paranoid delusions and hallucinations as he fell asleep or awoke from sleep. Tr. 553, 556. July 2020 records state that Romero reported self-harm by hitting himself against the wall. Tr. 618. Nevertheless, Romero reported that he felt he did not need to be hospitalized and that he could cope on his own. *Id.* August, September, and November 2020 records state that Romero did not have hallucinations or delusions. Tr. 564, 585, 587, 594. September 2020 records noted that Romero reported occasionally hearing his name called at night from a voice inside his head. Tr. 643. He denied "seeing any images lately" but reported mild paranoia about others talking about him. *Id.* The records also note that Romero had "some obsession with numbers" and felt that all numbers meant something. *Id.*

August 2020 records state that Romero had "minimal benefit with large dose of antidepressant" and that he "may need more of behavior modification than just medication alone." Tr. 625. The records state that the provider had an "extensive discussion" with Romero on how to cope with resistant depression. *Id.* The records

noted methods such as regular exercise, structuring the day, avoiding excessive time online, sleep hygiene, and avoiding alcohol and other substances. *Id.* The notes state that Romero was "partly receptive" and that the provider would consider adding Wellbutrin for depression *Id.*

November 2020 records indicate that, although Romero had a depressed mood, he was cooperative and exhibited progress by engagement and use of coping skills for his stress. Tr. 492, 493, 495. The records show that Romero was taking Wellbutrin for depression, Remeron for sleep and depression, Lithium for mood stability, and Abilify for psychosis and paranoia. Tr. 499. The records state that Romero reported depressive symptoms such as feeling down and hopeless and having negative thoughts, but he did not have any crying spells. Tr. 500. Romero reported psychotic symptoms such as hearing someone knock at his door and feeling that someone may come to hurt him. *Id.* The records also state that he "ha[d] mild depression [that] fluctuate[d] and [was] chronic" with a limited response to medication. *Id.* Romero also reported self-injury at least twice per week by hitting himself in the head with his fist when angry or frustrated. Tr. 711.

February, March, and June 2021 records show that Romero usually had a flat or dysthymic affect but was cooperative and had no hallucinations or delusions. Tr. 510, 514, 649, 652. His judgment and insight varied between "limited" and "good," and his thought process was "logical." Tr. 510, 514, 516, 527, 649, 652. February 2021 records note that Romero reported that he "definitely [has] been doing much better." Tr. 732. March and June 2021 records state that Romero still hit himself sometimes when frustrated but not to the same extent as before. Tr. 738, 748. The records state that his sleep, anxiety, and obsession with numbers were better. Tr. 738, 748. The June 2021 records, in addition to major depressive disorder and dysthymic disorder, state that

13

Romero had "unspecified psychosis not due to a substance or known physiological condition." Tr. 750–51.

The ALJ concluded that the objective medical evidence supported a finding that Romero could perform simple, low-stress work with occasional contact with others. Tr. 25. The ALJ further supported this finding with Romero's function report, which indicates that, despite his vision and other impairments, Romero could drive, study, shop in stores and online, perform personal care without reminders, cook simple meals, and do chores such as laundry and cleaning. Tr. 25, 227–29, 251–54. The ALJ explained that, because of Romero's visual limitations, the ALJ incorporated limitations such as handling objects the size of a medium size marble, sorting large objects, and excluding work around hazards such as open flames, large bodies of water, and moving machinery. Tr. 26.

The ALJ also considered the December 18, 2019 statement from Romero's treating physician, Myriam Thiele, M.D. Tr. 26. The check-the-box form completed by Thiele states that Romero is unable to work or participate in activities to prepare for work due to major depressive disorder, recurrent moderate. Tr. 339–40. The form also states that the disability is not permanent but is expected to last more than six months. Tr. 339. Thiele did not opine on Romero's capabilities or suggest any activity restrictions. Tr. 339. The ALJ found this opinion to be unsupported by the record evidence, which indicated that Romero attended college and was engaged in daily gaming and communication with others. Tr. 26. The ALJ found Thiele's opinion to be unpersuasive. *Id.*

The ALJ considered the state agency medical consultants' opinions. Tr. 26. The consultants at both the initial and reconsideration levels of review found that Romero did not have any exertional limitations but had limited visual acuity, color vision, field of vision, and depth perception. Tr. 76, 87–88. The ALJ

14

found these opinions to be persuasive because they were consistent with and supported by the evidence. Tr. 26.

The ALJ considered the state agency psychological consultants' opinions. Tr. 27. The consultants opined that Romero's mental impairments were non-severe and that he had only mild limitations in mental functioning under the paragraph B criteria. Tr. 74, 85–86. The ALJ found these opinions to be unpersuasive because they were not supported by the medical records submitted at the hearing, which had not been available at the initial and reconsideration levels of review. Tr. 27. Based on the foregoing, the ALJ properly considered the supportability and consistency of the medical opinions and administrative medical findings. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2) (2019) (requiring the SSA to explain how it considered the factors of supportability and consistency in evaluating the persuasiveness of medical opinions and administrative medical findings).

The ALJ's RFC determination is not meaningfully in dispute. Again, Romero states in conclusory fashion that had the ALJ considered his psychosis to be severe, "a different outcome would have been achieved." ECF No. 12 at 12. There is no explanation of *how* a different outcome would have been achieved. As discussed, the ALJ considered Romero's psychotic symptoms but found he could work. The court has reviewed all of the above records and finds that the ALJ's assessment is consistent with the law and supported by substantial evidence.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs he previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2019); *see also Perez*, 415 F.3d at 462. If the claimant can perform his past work, he is not disabled. 20 C.F.R. § 404.1520(f) (2019). If the claimant cannot perform his

past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1) (2019).

The ALJ determined Romero could not perform his past relevant work as a shipping and receiving clerk and store laborer because of non-exertional and environmental limitations. Tr. 27. This finding is not in dispute.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)).

The ALJ found that Romero could perform jobs that exist in significant numbers in the national economy. Tr. 27–29. The ALJ relied on the VE's testimony that an individual of Romero's age, education, work experience, and RFC could adjust to work as a laundry worker, hand packager, housekeeping cleaner, garment sorter, office helper, table worker, and mail addresser. Tr. 28. The ALJ concluded that Romero was not disabled. Tr. 29.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and Romero's attorney had the opportunity to cross examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 276–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's

findings at step five are supported by substantial evidence. The ALJ's finding at step five is not in dispute.

### 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Romero's Motion for Summary Judgment be **DENIED**; that the Commissioner's Motion for Summary Judgment be **GRANTED**; and that the Commissioner's final decision be **AFFIRMED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on July 31, 2023.

Peter Bray
United States Magistrate Judge